Matthew R. Lewis (7919)
Jascha K. Clark (16019)
Brittany J. Merrill (16104)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile: (801) 532-7543
E-mail: mlewis@rqn.com
E-mail: jclark@rqn.com
E-mail: bmerrill@rqn.com
*Attorneys for Receiver, Maria E. Windham*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CRAIG MARTIN SHULTS,  an individual; CYNTRIX, INC., a dba or unknown entity; DUTCH ACQUISITIONS, a dba or unknown entity; OPEN MARKET REALTY CORP, a suspended California Corporation; STRATEGIC PROPERTIES, LLC, a dba or unknown entity, STP EQUITIES, LLC a suspended California limited liability company; STRATEGIC PROPERTY INVESTMENTS, LLC, a dba or unknown entity; LOW INCOME REO, INC., a Delaware Corporation; GORDON BOLSTER, an individual, GLB INVESTMENTS, LLC a dissolved Washington limited liability company; DAWN  C. POWERS, an individual; LAWRENCE LEELAND LOOMIS, an individual; ARMOR EQUITIES, LLC, an unknown entity or dba; and JOHN DOES 1-5,<br><br>Defendants. | **COMPLAINT**<br>**(Ancillary Suit)**<br><br>Case No. 2:18-cv-00062-PMW<br><br>Magistrate Judge Paul M. Warner |

Maria E. Windham (the "Receiver"), as Receiver for Marquis Properties, LLC and the assets of the Marquis Properties Receivership Estate complains against Defendants Craig Martin Shults ("Shults"), Cyntrix, Inc. ("Cyntrix"), Dutch Acquisitions ("Dutch"), Open Market Realty Corp. ("Open Market"), Strategic Properties, LLC ("Strategic Properties"), STP Equities, LLC ("STP Equities"), Strategic Property Investments, LLC ("SPI"), Low Income REO, Inc. ("Low Income REO"), Gordon Bolster ("Bolster"), GLB Investments, LLC ("GLB"), Dawn C. Powers ("Powers"); Lawrence Leeland Loomis ("Loomis"), Armor Equities, LLC ("Armor"), and John Does 1-5 (each a "Defendant" and collectively, "Defendants") as follows:

## INTRODUCTION

This lawsuit is related to a real estate Ponzi scheme (the "Marquis Ponzi Scheme") perpetrated by Chad Deucher ("Deucher") through Marquis Properties, LLC ("Marquis Properties"). Deucher pleaded guilty in his criminal case to operating Marquis Properties as a Ponzi scheme from 2010 to 2016, and he is currently serving 84 months of prison time. *See United States v. Chad Roger Deucher*, United States District Court for the District of Utah, Case No. 2:16-CR-189-DN.

This is one of several "claw back" lawsuits concerning the Marquis Ponzi Scheme filed by the Receiver appointed by the Court in the civil case filed by the Securities and Exchange Commission ("SEC") concerning the Marquis Ponzi Scheme. In this lawsuit, the Receiver seeks to "claw back" into the Marquis Properties Receivership Estate commission payments Marquis Properties transferred to the Defendants, directly or indirectly, together with all other payments and assets that Marquis Properties transferred to Defendants, directly or indirectly, while

Defendants had reason to know that the payments and assets were fraudulently transferred or for which the Defendants failed to provide reasonably equivalent value.

The individual defendants to this claw back lawsuit Shults, Powers, Loomis, and Bolster (the "Individual Defendants") are, upon information and belief, residents of California and Washington who worked in combination with each other to solicit victim investors located outside of Utah to invest in the Marquis Ponzi Scheme. Shults, Powers, and Loomis were not licensed to sell securities. Bolster was licensed as an investment adviser only. None of the entity Defendants, which were owned and/or controlled by the Individual Defendants, were licensed to sell securities. Nonetheless, the Individual Defendants, working individually and through the entity Defendants, successfully solicited several victim investors, including clients of Bolster's into the Marquis Ponzi Scheme.

As compensation for the Individual Defendants' successful solicitations of victim investors into the Marquis Ponzi Scheme, Deucher caused Marquis Properties to make payments of commissions and other transfers of assets directly and indirectly to the Defendants or to others for the Defendants benefit. Additionally, upon information and belief, some or all of the Defendants obtained funds or other assets directly from victim investors for investment in the Marquis Ponzi Scheme, and took fees or other payments from the investors' funds before conveying the remainder to Marquis Properties.

Each and every Defendant must return the payments and other assets received directly or indirectly from Marquis Properties as well as the value of all payments and transfers of assets from Marquis Properties to other persons for which that Defendant was a beneficiary. This is because Deucher acted with fraudulent intent in furtherance of the Marquis Ponzi Scheme and

while Marquis Properties was insolvent, when he caused Marquis Properties to transfer all such payments and assets. Marquis Properties did not receive reasonably equivalent value for the transfers to Defendants. Finally, these Defendants, who solicited other investors into the Marquis Ponzi Scheme in violation of securities laws, will be unable to prove that they obtained the payments and transfers of assets in good faith without reason to know the payments constituted fraudulent transfers.

Additionally, the Defendants must provide an accounting to the Receiver and return all payments they received out of the Marquis Ponzi Scheme victim investors' funds because Defendants would otherwise be unjustly enriched thereby. They should be deemed to hold any payments of investor funds or assets in constructive trust for the Receiver. Together, the value of the assets that the Defendants wrongfully obtained from the money invested by victims of the Marquis Ponzi Scheme exceeds $300,000.

## PARTIES

1. Maria E. Windham is the court-appointed Receiver for Marquis Properties and the Marquis Properties Receivership Estate.

2. Defendant Craig Martin Shults is an individual who, upon information and belief, resides in Orange County, California. Defendant Cyntrix, Inc. is a dba or unknown entity controlled owned and controlled by Craig Martin Shults with its principal place of business, upon information and belief, in Orange County, California. Defendant Dutch Acquisitions is, upon information and belief, a dba or unknown entity controlled by Craig Martin Shults with its principal place of business in Orange County, California. Defendant Open Market Realty Corp. is a suspended California corporation, owned and controlled by Craig Martin Shults with its

principal place of business in Orange County, California.  Defendant Strategic Property Investments, LLC is, upon information and belief, a dba or unknown entity controlled by Craig Martin Shults with its principal place of business in Orange County, California.  Defendant Low Income REO, Inc. is a Delaware corporation, upon information and belief, owned and controlled by Craig Martin Shults with its principal place of business in Orange County, California.  Collectively, Defendants Craig Martin Shults, Cyntrix, Inc., Dutch Acquisitions, Open Market Realty Corp., Strategic Properties, LLC, STP Equities, LLC, Strategic Property Investments, LLC, and Low Income REO, Inc. are identified herein as the "Shults Defendants."

3. Defendant Gordon Bolster is an individual who, upon information and belief, resides in Spokane County, Washington.  Defendant GLB Investments, LLC is a dissolved Washington corporation owned and controlled by Gordon Bolster, with its principal place of business, upon information and belief, in Spokane County, Washington.  Collectively, Defendants Gordon Bolster and GLB Investments, LLC are identified herein as the "Bolster Defendants."

4. Defendant Dawn C. Powers is an individual who, upon information and belief, resides in Placer County, California.  Defendant Lawrence Leland Loomis, also known as Lee Loomis, is an individual who, upon information and belief, resides in Placer County, California.  Defendant Armor Equities, LLC is, upon information and belief, a dba or unknown entity controlled by controlled by Dawn Powers and/or Lee Loomis with its principal place of business in Placer County, California.  Collectively, Defendants Dawn C. Powers, Lee Loomis, and Armor Equities, LLC are identified herein as the "Armor Defendants."

5. Defendants John Does 1 through 5 are individuals or entities whose identities are

presently unknown to the Receiver who received transfers of Marquis Properties assets directly or indirectly through or on behalf of the named Defendants. The Receiver will move to amend her Complaint as the identities of the John Does become known.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 754, and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367. This Complaint is brought to accomplish the objectives of the Amended Order Appointing Receiver, and thus this matter is ancillary to the Court's exclusive jurisdiction over the receivership estate.

7. The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§754 and 1692.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 754 as this action is related to the SEC's parallel civil case pending in this District and the Receiver was appointed in this District.

## GENERAL ALLEGATIONS

**Marquis Ponzi Scheme**

9. Marquis Properties was operated by its principal Chad Deucher as a Ponzi scheme at all times relevant to the matters asserted in this action.

10. On information and belief, Deucher raised this money from over 250 investors in Marquis Properties.

11. Deucher represented to investors that Marquis Properties offered investments in turnkey real estate properties, promissory notes secured by real properties, and joint venture

agreements to purchase real properties. In that regard, Deucher represented that Marquis Properties located, purchased, renovated, and sold single family and small multi-family homes in lucrative areas of the country. Deucher told investors that Marquis Properties has proven renovation crews, property managers and realtors on the ground to assist with all stages of the project, eliminating the need for direct involvement of the investors.

12. Deucher represented to investors that they would receive guaranteed return of principal and returns on their investment in the form of rental income, interest payments, and/or profits from the sale of properties. He promised that Marquis Properties would pay return of "rents" on their investments even when no renters occupied the real properties.

13. The investments offered by Marquis Properties constitute securities.

14. Deucher represented that investments with Marquis Properties were safe, low-risk, or risk-free because investment proceeds would be secured by a first deed of trust on property wholly owned by Marquis Properties, and that investments would be "over-collateralized."

15. Deucher omitted to disclose to investors, however, that (a) the properties Marquis Properties offers as collateral were not owned by Marquis Properties, were substantially encumbered, and/or were in uninhabitable or blighted condition; (b) that Marquis Properties itself was insolvent and unable to make investor interest and principal payments according to terms of agreements; and (c) that investor returns were being paid from the funds of new investors.

16. In April 2017, Deucher pleaded guilty in his parallel criminal case, Case No. 2:16-CR-189-DN, to operating Marquis Properties as a Ponzi scheme between March 2010 and

February 2016. Moreover, in his statement in advance of his guilty plea, Deucher admitted that he had engaged in securities fraud in relation to the sale of real-estate based securities. *See* Case No. 2:16-CR-189-DN, Dkt. No. 50 at ¶¶ 11(a)-(e).

17. On October 11, 2017, Deucher was sentenced to 84 months in federal prison, and, upon his release, 36 months of supervised release. Deucher was also ordered to pay $16,560,552.00 in restitution.

**The SEC Action**

18. On January 19, 2016, in case No. 2:16-cv-00040-JNP, the Securities and Exchange Commission ("SEC") filed suit (the "SEC Action") against Deucher, Clatfelter and Marquis Properties, LLC. Deucher's wife, Jessica Deucher, was named as a relief defendant.

19. On January 20, 2016, this Court entered the Order Freezing Assets and Protecting Documents (Dkt. No. 10) (the "Freeze Order").

20. The Freeze Order specifically ordered that:

Except as otherwise specified herein, all of Defendants' Assets are frozen. All persons and entities with direct or indirect control over any of Defendants' Assets, who receive actual notice of this order, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, encumbering, concealing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but is not limited to, Defendants' Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds. Such institutions are caused to hold or retain within their control and prohibit the withdrawal, removal, transfer, or other disposal of any such assets, funds, or other properties.

(*See id.* at 2-3.)

21. On January 18, 2017, the Court entered the Order Appointing Receiver, pursuant to which Maria E. Windham was appointed Receiver. (*See* Dkt. No. 110.)

22. On October 24, 2017, the Court amended the terms of the Order Appointing

Receiver and issued an Amended Order Appointing Receiver.[1] (Dkt. No. 182.)

23. The Court found appointment of the Receiver to be "necessary and appropriate for the purposes of marshaling and preserving Defendants' Marquis Properties (the 'Entity Receivership Defendant') and Chad Deucher's (the 'Individual Receivership Defendant') (collectively the 'Receivership Defendants') assets that were frozen by the [Freeze Order]." (Dkt. No. 182).

24. The Court defined the "Receivership Estate" as the assets of Marquis Properties, LLC and Chad Deucher that were frozen by the Court's Order Freezing Assets on January 20, 2016 ("Frozen Assets"), as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) were fraudulently transferred by the Defendants (the "Recoverable Assets").[2] (*Id.* at 1-2.)

25. Further, the Court found that based on the record in the proceedings before it, the Frozen Assets and Recoverable Assets include, but are not limited to all assets of the following entities owned or operated by the Individual Receivership Defendant: Marquis Air, LLC; Marquis Companies, LLC; Marquis Enterprises, LLC; Marquis, LLC; Marquis Direct; Invo; and Invo Direct (collectively with Marquis Properties, the "Marquis Entities"). (*Id.* at 2.)

26. Moreover, the Court ordered that in order for any of the Receivership Defendants' property or interest in property, of any kind whatsoever, whether real or personal, whether direct or indirect, to be excluded from the Receivership Estate, the Receivership Defendants were

---

[1] On January 12, 2018, the Court entered a further Order Reappointing Maria E. Windham Receiver that reappointed Ms. Windham on the same terms. (Dkt. No. 205.) This procedure is utilized to reset the 10 day clock to file notices pursuant to 28 U.S.C. § 754.
[2] Except, the Court excluded the residence titled in the name of Relief Defendant, Jessica Deucher located at 1136 North 650 East, Orem Utah from the Receivership Estate. (Dkt. No. 182).

required to file an accounting with the Court, including books and records sufficient to identify a source of the assets that is unconnected with investor funds, frozen assets, or other fraudulent activities, within 20 days of the entry of Amended Order Appointing Receiver.  (*Id.* at ¶ 4.)

27. Pursuant to the terms of the Amended Order Appointing Receiver, the Receiver is charged with, among other things, investigating the activities of the Receivership Defendants, gathering and recovering assets of the Receivership Defendants, including pursuing claims to recover those assets, as necessary.  Specifically, Paragraph 6 of the Amended Order Appointing Receiver vests the Receiver with, among other authority, "all powers and authority of a receiver at equity." (*See id.*at ¶ 6.)  The Receiver is caused to "pursue and preserve all of the Marquis Entities claims (*id.* at 7), and she has authority to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver." (*Id.* at ¶ 9(I); s*ee also id.* at ¶ 36.)

**Transfers of Commissions and Other Payments to Defendants**

28. While Deucher operated Marquis Properties as a Ponzi scheme, and while Marquis Properties, LLC was insolvent, Deucher caused payments of commissions and other payments directly or indirectly to Defendants from Marquis Properties bank accounts where the funds of victim investors were deposited.

29. Some of the payments were made directly from Marquis Properties bank account by check or wire transactions.  Upon information and belief, other payments were made indirectly through Defendants or other persons.

30. Deucher wrongfully caused Marquis Properties to make these payments of commissions and other payments in furtherance of his fraud with actual intent to hinder, delay or

defraud investors.

31.     Deucher caused Marquis Properties to make these payments of commissions and other payments directly or indirectly to Defendants as compensation for Defendants soliciting additional investors into the Marquis Ponzi scheme.  Each and every one of these payments of commissions and other payments reduced the assets of Marquis Properties available to repay investors.

32.     Upon information and belief, the Defendants cannot establish that they returned reasonably equivalent value for each of the payments received and did so in good faith without reason to know the payment was improper.

**Specific Payments Made to Each Defendant**

**The Shults Defendants**

33.     The Shults Defendants are not licensed to sell securities.

34.     Nevertheless, the Shults Defendants entered into an agreement with Marquis and/or Bolster in which they agreed to cooperate in soliciting investors into Marquis Properties.

35.     Defendant Shults, acting for himself and on behalf of the other Shults Defendants, successfully solicited multiple victim investors to invest money in Marquis Properties.

36.     Accordingly, beginning at least by 2010 and continuing at least through 2013, Deucher caused Marquis Properties to pay the Shults Defendants commissions and other payments as compensation for the Shults' Defendants solicitations of  victim investors into the Marquis Ponzi scheme, including without limitation the following sample payment:

    a.  On March 1, 2011, Marquis Properties made a wire payment from its bank
        account at U.S. Bank, which had an account number ending in 9561, to Open

>Market Realty in the amount of 13,000 with the notation "Special Deal with Craig Shults wire out". Deucher classified this payment in Marquis' ledger as a "Commission Expense."

37. The payments Deucher caused Marquis Properties to make to the Shults Defendants from Marquis Properties U.S. Bank Accounts amount to substantially more than $ 100,000.

38. The Shults Defendants had reason to know the transfers paid to them were fraudulent transfers, and the transfers paid to them were unsupported by good faith and reasonably equivalent value.

39. The source of all of these payments to the Shults Defendants was investor funds.

40. Additionally, upon information and belief, the Shults Defendants also collected investor funds directly into their possession for investment in the Marquis Ponzi Scheme. Those funds are subject to a constructive trust in favor of Marquis Properties.

**The Bolster Defendants**

41. Defendant Bolster is licensed as an investment adviser only. He is not licensed to act as a broker for sale of securities. The other Bolster Defendants are not licensed to sell securities.

42. Nevertheless, the Bolster Defendants entered into an agreement with Marquis and/or Shults, Powers and/or Loomis in which they agreed to cooperate in soliciting investors into Marquis Properties.

43. Defendant Bolster, acting for himself and on behalf of the other Bolster Defendants, successfully solicited multiple victim investors to invest money in Marquis

Properties.

44. Accordingly, beginning at least by 2012 and continuing at least through 2014, Deucher caused Marquis Properties to pay the Bolster Defendants commissions and other payments as compensation for the Shults' Defendants solicitations of victim investors into the Marquis Ponzi scheme, including without limitation the following sample payments:

    a. On November 2, 2011 Marquis Properties made a payment from its bank account at U.S. Bank, which had an account number ending in 9561 to GLB Investments in the amount of $15,000 with the notation "Fee for 2 Homes – 2 homes sold for gordon's client phantom properties"

45. The payments Deucher caused Marquis Properties to make to the Bolster Defendants from Marquis Properties U.S. Bank Accounts amount to substantially more than $97,000.

46. The Bolster Defendants had reason to know the transfers paid to them were fraudulent transfers, and the transfers paid to them were unsupported by good faith and reasonably equivalent value.

47. The source of all of these payments to the Bolster Defendants was investor funds.

48. Additionally, upon information and belief, the Bolster Defendants also collected investor funds directly into their possession for investment in the Marquis Ponzi Scheme. Those funds are subject to a constructive trust in favor of Marquis Properties.

**The Armor Defendants**

49. Defendants Armor, Powers, and Loomis are not licensed to sell securities.

50. Nevertheless, the Armor Defendants entered into an agreement with Marquis

and/or Shults and/or Bolster in which they agreed to cooperate in soliciting investors into Marquis Properties.

51. Defendants Loomis and Powers, by and through Armor, successfully solicited multiple victim investors to invest money in Marquis Properties.

52. Accordingly, beginning at least by 2010 and continuing at least through 2011, Deucher caused Marquis Properties to pay the Armor Defendants commissions and other payments as compensation for the Armor Defendants solicitations of victim investors into the Marquis Ponzi scheme, including without limitation the following sample payments:

   a. On August 3, 2010 Marquis Properties made a payment from its bank account at U.S. Bank, which had an account number ending in 9561 in the amount of $7,000 with the notation "Draw for Lee Loomis." Deucher classified it in Marquis Properties' ledger as a "Commission Expense."

53. The payments Deucher caused Marquis Properties to make to the Armor Defendants from Marquis Properties U.S. Bank Accounts amount to substantially more than $100,000.

54. The Armor Defendants had reason to know the transfers paid to them were fraudulent transfers, and the transfers paid to them were unsupported by good faith and reasonably equivalent value.

55. The source of all of these payments to the Armor Defendants was investor funds.

56. Additionally, upon information and belief, the Armor Defendants also collected investor funds directly into their possession for investment in the Marquis Ponzi Scheme. Those funds are subject to a constructive trust in favor of Marquis Properties.

## FIRST CLAIM FOR RELIEF

(**Fraudulent Transfer – Utah Uniform Fraudulent Transfer Act – All Defendants**)

57. The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

58. Each and every Defendant received transfer(s) of assets from Marquis Properties.

59. At all times relevant to the matters asserted herein, Deucher operated Marquis Properties as a Ponzi scheme.

60. Because the transfers were made at the direction of Chad Deucher while Marquis Properties was operated as a Ponzi scheme, as a matter of law, these transfers were made with the intent to hinder, delay or defraud creditors and/or investors of Marquis Properties.

61. Furthermore, the transfers were made at a time when Marquis Properties was insolvent

62. The payments were made from investor funds and reduced the amount of money available to return to investors.

63. Defendants will be unable to establish that Marquis Properties received reasonably equivalent value for the transfers and that Defendants took the payments in good faith.

## SECOND CLAIM FOR RELIEF
(**Unjust enrichment – All Defendants**)

64. The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

65. A benefit was conferred upon each and every Defendant by transfer of assets belonging to Marquis Properties to the Defendant or to another for the Defendant's benefit.

66. Each and every Defendant knew of the benefit conferred upon her by receipt of assets from Marquis Properties.

67. Each and every Defendant's retention of assets or the benefit of the assets conferred by Marquis Properties, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

68. At all times relevant to the matters asserted herein, each Defendant did not have a license to sell securities and/or each Defendant otherwise sold securities in violation of applicable securities laws.

69. Defendants could not legally accept commissions for bringing investors into the Ponzi scheme in violation of securities laws.

70. It would be unjust to allow Defendants to retain these illegally obtained commissions and other payments from the funds of victim investors or to retain the benefit thereof.

### THIRD CLAIM FOR RELIEF
**(Constructive Trust – All Defendants)**

71. The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

72. The commissions, fees, and other funds paid to each of the Defendants are proceeds that were unlawfully obtained from investors by means of artifice and fraud. Accordingly, those proceeds, including the fees and funds received by each of the Defendants, are impressed with a constructive trust.

73. A benefit was conferred upon each and every Defendant by transfer of assets

belonging to Marquis Properties to the Defendant.

74.     The Defendants have been unjustly enriched.

75.     It would be unjust to allow Defendants to retain these illegally obtained investor asset funds.

76.     Each and every Defendant's retention of assets conferred by Marquis property, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

77.     The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each payment or fee.

## FOURTH CLAIM FOR RELIEF
### (Accounting – All Defendants)

78.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of this Complaint.

79.     As of the date of the filing of this Complaint, the Receiver has performed and continues to perform an investigation and analysis of the use of the proceeds of the fraudulent investment offerings, including the payment of fees and other payments to the Defendants.

80.     As part of her investigation and analysis, the Receiver endeavored to determine how much money was actually paid to each of the Defendants. Based upon the information currently available to her, the Receiver has made an initial calculation of the amounts paid to each Defendant.

81.     The Receiver understands that the information available to her may be incomplete.

82.     The Receiver is entitled to an accounting from each of the Defendants, including the return of all monies received, directly or indirectly, from Marquis Properties.

**WHEREFORE**, the Receiver prays as follows:

A.  That the Court avoid all fraudulent transfers, and each and every Defendant be ordered to return to the Receivership Estate the funds that she received from Marquis Properties, and that judgment be entered against each Defendant and in favor of the Receiver for the total amount transferred to each Defendant;

B.  In the case that the funds were spent to acquire any real or personal property, the Receiver requests that a constructive trust be imposed upon the property, and an order that it must immediately be turned over to the Receiver.

C.  For a constructive trust be imposed on all assets the retention of which would unjustly enrich Defendants.

D.  For an accounting of funds belonging to Marquis Properties investors collected by Defendants;

E.  For prejudgment interest; and

F.  For such other relief as the Court may allow.

DATED this 18th day of January, 2018.

                        RAY QUINNEY & NEBEKER P.C.

                        */s/ Jascha K. Clark*
                        Matthew R. Lewis
                        Jascha K. Clark
                        Brittany J. Merrill

                        *Attorney for the Receiver, Maria E. Windham*

1440936